UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

CODY LUKAS and JUSTIN
SIMPSON,                          Case No. 25-cv-10432

    Plaintiffs,                   HON. SHALINDA D. KUMAR

v                                 MAG. ANTHONY P. PATTI

AIMEE BRIMACOMBE,

    Defendant.
_____/

## PLAINTIFFS' RESPONSE TO
## DEFENDANT'S MOTION TO DISMISS

NOW COME the Plaintiffs, Cody Lukas and Justin Simpson, by
and through their attorneys, O'Keefe Law, PLLC, and hereby ask the
Court to DENY Defendant's Motion to Dismiss under Federal Rule of
Civil Procedure 12(b)(1) & (6).

                          Respectfully submitted:

Dated: April 8, 2025      /s/ Patrick William O'Keefe_____
                          Patrick William O'Keefe (P59324)
                          Nathaniel P. Pfeiffer (P87830)
                          O'Keefe Law, PLLC
                          Attorneys for Plaintiffs
                          7804 Francis Ct., Ste. 210
                          Lansing, MI 48917
                          (517) 253-0114
                          patrick@okeefelaw.net
                          nathaniel@okeefelaw.net

1

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

CODY LUKAS and JUSTIN
SIMPSON,

     Case No. 25-cv-10432

     Plaintiffs,

     HON. SHALINDA D. KUMAR

v

     MAG. ANTHONY P. PATTI

AIMEE BRIMACOMBE,

     Defendant.

_____/

## BRIEF IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................ii

CONCISE STATEMENT OF ISSUES PRESENTED ............................iv

STATEMENT OF FACTS ....................................................................1

ARGUMENT .......................................................................................2

    I.    Immunity does not bar Plaintiffs' claims ..............................2

        A.    Defendant is not entitled to absolute quasi-judicial immunity, as she was not engaging in either judicial or quasi-judicial function by acting as a judge, court officer, or under valid court orders ..........................................................................2

        B.    It is generally inappropriate to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity ........................................................................7

    II.    Plaintiffs' claims do not otherwise fail as a matter of law ...................................................................................12

        A.    Plaintiffs did not bring or even begin to allege a false arrest claim in the Complaint ............................12

        B.    Plaintiffs maintain a viable claim for malicious prosecution ...................................................................13

CONCLUSION AND RELIEF REQUESTED .......................................19

**Pages(#)**

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) ......................................... 8

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ....................... 7

*Bradley v. Fisher*, 80 U.S. 335, 347 (1871) ............................................... 3

*Briscoe v. LaHue*, 460 U.S. 325, 328 (1983) .............................................. 5

*Burns v. Reed*, 500 U.S. 478, 468-87 (1991) ............................................... 5

*Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994) ................................... 2, 3

*Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 897 (6th Cir. 2019) .............. 8

*Courtright v. City of Battle Creek*, 839 F.3d 513, 518
    (6th Cir. 2016) ...................................................................................... 7

*Donohoe v. Burd*, 722 F.Supp. 1507 (6th Cir. 1991) ......................... 11, 15

*Edison v. Township of Northville*, 752 F.Supp.3d 808 (2024) ................ 11

*Forrester v. White*, 484 U.S. 219, 225 (1988) ........................................ 2, 4

*Graham v. Connor*, 490 U.S. 386 (1989) ................................................. 17

*Guertin v. Michigan*, 912 F.3d 907, 917 (6th Cir. 2019) ........................... 7

*Hart v. Hillsdale County, Michigan*, 973 F.3d 627, 635
    (6th Cir. 2020) ................................................................................. 7, 16

*Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. 2015) .......................... 14

*Miller v. Maddox*, 866 F.3d 386 (6th Cir. 2017) ..................................... 14

*Mills v. Barnard*, 869 F.3d 473, 487 (6th Cir. 2017) ............................... 8

*Moldowan v. City of Warren*, 578 F.3d 351, 390 (6th Cir. 2009) ............. 5

*Ramsey v. Rivard*, 694 F.Supp.3d 955 (6th Cir. 2023) ............................ 5

*Singleton v. Kentucky*, 843 F.3d 238, 242 (6th Cir. 2016) ................. 7, 12

*Spurlock v. Satterfield*, 167 F.3d 995 (6th Cir. 1999) .............................. 6

*Stump v. Sparkman*, 435 U.S. 349 (1978) ............................................... 3

*Sykes v. Anderson*, 625 F. 3d 294 (6th Cir. 2010) ................. 13, 14, 15, 16

*Wallace v. Kato*, 549 U.S. 384, 390 (2007) ............................................ 13

*Webb v. United States*, 789 F.3d 647, 663 (6th Cir. 2015) ..................... 14

*Wesley v. Campbell*, 779 F.3d 421, 433-34 (6th Cir. 2015) ...................... 7

**Statutes**

42 U.S.C. § 1983 ........................................................................... passim

**Rules**

Fed. R. Civ. P. 8(a)(2) ............................................................................ 8

Fed. R. Civ. P. 12(b) ..................................................................... passim

**CONCISE STATEMENT OF ISSUES PRESENTED**

1. Is Defendant entitled to quasi-judicial or absolute witness immunity for her preliminary examination testimony?

2. Is Defendant entitled to qualified immunity?

3. Do Plaintiffs bring a valid § 1983 Malicious Prosecution claim under the Fourth Amendment?

**STATEMENT OF FACTS**

Plaintiffs take issue with Defendant's characterization of the settlement in the Rule 12(b)(6) Motion to Dismiss. In an attempt to obfuscate the primary issues for this Court and mask the abnormality of the settlement, Defendant claims that Plaintiffs themselves were the primary beneficiaries of both indemnification and the negotiated resolution of a serious civil rights claims filed against them. A compilation of data found in annual reports published by the Senate Fiscal Agency found that MSP paid roughly $2.1 million to settle twenty similar non-fatal claims between the 2020 and 2023 fiscal year. The average settlement amount was $104,842 and only one settlement was above $200,000. The lone outlier was a $914,000 settlement paid out after almost three years of extensive litigation in which the department held out until almost the eve of a federal trial to finally settle. Furthermore, that settlement was predicated on the significant distinction that serious injuries occurred due to officer behavior after the alleged victim in that case had surrendered or was in the process of surrendering (not actively resisting). However, in Plaintiffs' case, Defendant spearheaded an effort to pay out $999,999 to the Complaining

Victim (Long) without investing nearly the same effort. This sum was just $1 short of the one-million-dollar threshold that would have required the settlement to be reported to Governor Whitmer's Chief Legal Counsel Christina Grossi. The result of this negotiation spearheaded by Defendant, was an abnormally large settlement enriching the brother of Defendant's personal acquaintance that came at the cost of demonizing Plaintiffs and causing them to be charged criminally.

## ARGUMENT

### I. Immunity does not bar Plaintiffs' claims.

#### A. Defendant is not entitled to absolute quasi-judicial immunity, as she was not engaging in either judicial or quasi-judicial function by acting as a judge, court officer, or under valid court orders.

The doctrine of absolute judicial immunity has long been recognized as a fundamental necessity in the legal system. *Forrester v. White*, 484 U.S. 219, 225 (1988). The doctrine of absolute judicial immunity protects federal, state, and local *judges* from liability for their judicial or adjudicatory acts so long as they do not adjudicate in clear and absolute absence of their judicial jurisdiction. *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994). The rationale behind the doctrine of absolute judicial immunity was to protect judicial independence from the "vexatious

actions prosecuted by disgruntled litigants," and ensure that appeals remained the proper pathway to contest judicial error. *Bradley v. Fisher*, 80 U.S. 335, 347 (1871). The Supreme Court has established that absolute judicial immunity protects a *judge* with jurisdictional capacity who performs the type of act normally performed only by judges from suit under 42 U.S.C. § 1983. *Stump v. Sparkman*, 435 U.S. 349 (1978).

The doctrine of quasi-judicial immunity further extends the protections afforded to federal, state, and local *judges*, to those persons who perform tasks so integral or intertwined with the judicial process that they are considered to be the figurative arms of the immune judges. *Bush*, 38 F.3d at 847. For example, quasi-judicial immunity was originally established to protect people like a prosecutor who is intimately associated and integral to the judicial phase of the criminal process. However, the doctrine of quasi-judicial immunity has been extended to protect administrative, law enforcement, and prison officials from 42 U.S.C. § 1983 liability. In order to determine whether the specific actions of a government official are so intertwined and integral to the judicial process that quasi-judicial immunity should

apply, the Supreme Court established a "functional approach."

*Forrester*, 484 U.S. at 229. The Supreme Court established that the core test is to look at "the nature of the function performed, not the identity of the actor who performed it." *Id*. Whether a particular individual is entitled to quasi-judicial immunity for their acts depends on an analysis of the nature of the activities and the relationship of those activities to the judicial process as a whole. The public interest demands strict adherence to *judicial* decrees, so a fear of litigation being brought down on the officer executing a judicial order or process would undermine the efficiency of our court system.

In this case, Defendant is clearly not entitled to either absolute judicial immunity or quasi-judicial immunity, and as such, Defendant's motion to dismiss on these grounds should be summarily denied. Defendant is not a federal, state, or local judge who would be entitled to protection for any sort of judicial or adjudicatory acts. Similarly, although Defendant is a member of law enforcement, the testimony that she provided at the preliminary examination does not pass the functional approach standard set forth by the Supreme Court in *Forrester*. Defendant's testimony at the preliminary examination was

not a task so integral or intertwined with the judicial process that it established her as the figurative arm of the commanding judge. The burden remains on Defendant to establish that absolute quasi-judicial immunity is justified for the function in question. However, the act of witness testimony does not find its basis in either absolute judicial or quasi-judicial immunity, and as such Defendant is not entitled to quasi-judicial immunity. *Id*. The Supreme Court has been reluctant to extend the doctrine of absolute immunity to government officials in the exercise of their duties, opining that qualified immunity is sufficient. *Burns v. Reed*, 500 U.S. 478, 468-87 (1991).

Even under a doctrine of absolute witness immunity, a motion to dismiss on such grounds would not be appropriate given that Defendant's testimony is used only as a corroborating act in support of the claims, not as the conduct actually underlying the allegation. Defendant correctly states "[A]ll witnesses—police officers as well as lay witness—are absolutely immune from civil liability based on their trial testimony in judicial proceedings." *Moldowan v. City of Warren*, 578 F.3d 351, 390 (6th Cir. 2009) (quoting *Briscoe v. LaHue*, 460 U.S. 325, 328 (1983)); *Ramsey v. Rivard*, 694 F.Supp.3d 955 (6th Cir. 2023). This

immunity applies "no matter how egregious or perjurious that testimony was alleged to have been." *Id*. However, *Spurlock v. Satterfield*, 167 F.3d 995 (6th Cir. 1999), established that the simple fact that acts may lead to witness testimony does not serve to cloak these actions with absolute testimonial immunity. The acts alleged to serve as the foundational basis for the Complaint are non-testimonial in nature and occurred outside the scope of the judicial proceeding. *Id*. Long before Defendant offered testimony against Plaintiff Lukas at his preliminary examination, the Defendant made strident efforts in persuading an otherwise reluctant prosecuting official into charging Plaintiffs with crimes they did not commit. As such, absolute witness immunity would not apply to the facts serving as the underlying basis of the Complaint and a motion to dismiss on such grounds would also not be appropriate.

Therefore, Plaintiffs respectfully request this Court to deny the Defendant's motion to dismiss on absolute and quasi-judicial immunity grounds.

## B. It is generally inappropriate to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity.

The Sixth Circuit has repeatedly held that it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity. *Hart v. Hillsdale County, Michigan*, 973 F.3d 627, 635 (6th Cir. 2020). Although a law enforcement officer's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, "that point is usually summary judgment and not dismissal under Rule 12." *Wesley v. Campbell*, 779 F.3d 421, 433-34 (6th Cir. 2015); *see Guertin v. Michigan*, 912 F.3d 907, 917 (6th Cir. 2019); *see also Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). This Circuit has held that "[I]t is often perilous to resolve a Rule 12(b)(6) motion on qualified immunity grounds," because development of the factual record is frequently necessary to decide whether the official's actions violated clearly established law. *Singleton v. Kentucky*, 843 F.3d 238, 242 (6th Cir. 2016).

In deciding a motion under Rule 12(b)(6), a court must "determine whether the complaint contains enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint need only contain a "short and plain

statement of the claim showing that the pleader is entitled to relief."
*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P.
8(a)(2)). However, this statement must contain "factual content that
allows the court to draw the reasonable inference that the defendant is
liable for the misconduct alleged." *Id.* at 678. Although plausibility is
"not akin to a 'probability requirement'…it asks for more than a sheer
possibility that a defendant has acted unlawfully. *Id.* Furthermore,
"threadbare recitals of the elements of a cause of action, supported by
mere conclusory statements, do not suffice." *Twombly* at 678. As with
any other motion to dismiss, any analysis should be conducted while
accepting the plaintiffs' factual allegations as true and drawing all
reasonable inferences in his favor.

In order to defeat a claim of qualified immunity, the Plaintiffs must
demonstrate that the official's conduct (1) violated a constitutional right
that (2) was clearly established. *See Cahoo v. SAS Analytics Inc.*, 912
F.3d 887, 897 (6th Cir. 2019). Individuals have a clearly established
Fourth Amendment right to be free from malicious prosecution by a
Defendant who has "made, influenced, or participated in the decision to
prosecute the Plaintiffs." *Mills v. Barnard*, 869 F.3d 473, 487 (6th Cir.

2017). It is up to this Court to determine whether "reading the complaint in the light most favorable to the plaintiff, it is plausible that an official's acts violated the plaintiffs clearly established constitutional right."

In this case, Plaintiffs have presented evidence that clearly demonstrates a plausible (more than a sheer possibility under the *Iqbal* standard) malicious prosecution claim against Defendant. The Complaint pleads with sufficiency several facts that allege plausible reasons that Defendant would have made, influenced, or participated in the decision to prosecute the Plaintiffs. It is undisputed that Plaintiff and Tiffany Homola (sister of Complaining Victim) were acquaintances. However, after Homola personally contacted Defendant and the matter was reported the MSP Professional Standards Section as required by Official Order 02-01 (Reporting Dereliction of Duty/Violations of Law), Defendant no longer should have participated in the investigation of that complaint or decision to prosecute Plaintiffs. However, in order to secure financial gain for the brother of her acquaintance, Defendant continued to demonize and persecute Plaintiffs by actively inserting herself in the middle of the investigation and coercing the prosecutor

into charging the Plaintiffs with crimes that were unsupported by probable cause. That is a textbook violation of the Fourth Amendment. Defendant's actions involved far more than filing a report with her Department or offering sworn testimony at a preliminary hearing. The Defendant made several statements to witnesses that the Plaintiffs were going to be charged by the prosecutor, that she knew they were going to be charged, and subsequently, the prosecuting attorney had authorized these criminal charges against Plaintiffs based upon Defendant's zealous advocacy on behalf of her friend's brother and against Plaintiffs. The settlement that came through Defendant's active participation—just one dollar shy of $1 Million—is circumstantial evidence that Defendant was willing to use her position of influence, not only to prejudice the Plaintiffs, but also to unjustly enrich her friend's brother with an astounding and unheard-of settlement. This exorbitant settlement authorized by Defendant was an anomaly which would not have been possible without Defendant's strident acts of pressuring a prosecutor to charge Plaintiffs with crimes without probable cause.

In a normal case, the exercise of the prosecutor's independent discretion would have served as a complete defense for Defendant.

*Edison v. Township of Northville*, 752 F.Supp.3d 808 (2024). However, in this case, the prosecutor's independent discretion originally led to the charges being placed in the "declined to issue" bin at the prosecutor's office. It was only after a closed-door clandestine meeting between the prosecutor and Defendant (a high-ranking member at MSP) that the charges were suddenly issued. This fact, in combination with statements from the prosecutor's office about "pressure from Lansing" clearly indicates at least the plausible scenario where Defendant was responsible for either initiating or maintaining the criminal prosecution against Plaintiffs. Defendant is responsible for the initiation of criminal proceedings if her "expressed direction, request or pressure of any kind was the determining factor in the prosecutor's decision to commence the prosecution…" *Donohoe v. Burd*, 722 F.Supp. 1507 (6th Cir. 1991).

Despite Defendant's repeated attempts to downplay and diminish these facts as conclusory innuendo, unfounded inferences, or a "nothingburger," these facts clearly demonstrate a sufficient set of facts that allows this Court to draw the reasonably plausible inference that Defendant was liable for the misconduct alleged. The debate over factual allegations prior to the development of the factual record is why

the Sixth Circuit has frequently held that it is perilous to resolve a Rule 12(b)(6) motion on qualified immunity grounds (typically leaving the threshold question for summary judgment and not dismissal under Rule 12). *Singleton* at 635. After reading the complaint in the light most favorable to the Plaintiffs, it is plausible that Defendant's acts violated the Plaintiffs clearly established constitutional right under the Fourth Amendment to be free from malicious prosecution.

Therefore, Plaintiffs respectfully request that this Court deny Defendant's motion to dismiss on qualified immunity grounds.

## II.    Plaintiffs' claims do not otherwise fail as a matter of law.

### A. Plaintiffs did not bring or even begin to allege a false arrest claim in the Complaint.

Plaintiffs did not bring a claim for false arrest. Despite Defendant's best efforts to obfuscate the issues and confuse this Court, the original Complaint was very straightforward. Plaintiffs brought a single 42 U.S.C. § 1983 Claim for Malicious Prosecution. Malicious prosecution under the Fourth Amendment, which encompasses wrongful investigation, prosecution, conviction, and incarceration, is entirely distinct from the tort of false arrest. Malicious prosecution remedies detention accompanied not by absence of legal process, but by

wrongful institution of legal process. *Wallace v. Kato*, 549 U.S. 384, 390 (2007).

**B. Plaintiffs maintain a viable claim for malicious prosecution.**

In order to succeed on a § 1983 malicious prosecution claim predicated on a violation of the Fourth Amendment; Plaintiffs must demonstrate the following:

(1) A criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute.
(2) There was a lack of probable cause for the criminal prosecution.
(3) As a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure, and
(4) The criminal proceeding must have been resolved in the plaintiff's favor.

*Sykes v. Anderson*, 625 F. 3d 294 (6th Cir. 2010). In this case, it is not disputed that Plaintiffs meet the third and fourth element of the *Sykes* test. The criminal proceeding clearly terminated in the Plaintiffs favors after the district court declined to bind over on the felony charge of misconduct in office against Plaintiff Lukas and the remaining charges against both Plaintiffs were summarily dismissed, satisfying the fourth prong. Similarly, the third prong is also satisfied, as apart from the initial seizure, Plaintiffs were forced to comply with a pretrial release

program that included obligations such as posting bond, showing up on time for all court appearances, and restricting out-of-state travel. *See Miller v. Maddox*, 866 F.3d 386 (6th Cir. 2017).

On the other hand, significant disagreements exist on the interpretation of the first and second elements set forth in *Sykes*. At a minimum, "whether an officer influenced or participated in the decision to prosecute hinges on the degree of the officer's involvement and the nature of the officer's actions." *Sykes*, 625 F.3d at 311. Although it is not necessary to demonstrate that the officers influenced or participated with malice, "there must be some element of blameworthiness or culpability in the participation…truthful participation in the prosecution is not actionable." *Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. 2015).

The most clear-cut way for Plaintiffs to demonstrate satisfaction of this prong would be to show that Defendant gave false testimony before a grand jury. *See Webb v. United States*, 789 F.3d 647, 663 (6th Cir. 2015). However, an officer "can also influence or participate in the decision to prosecute by falsely prompting *or urging a prosecutor's decision to bring charges in the first place*." *Id.* at 666 (emphasis added).

As previously referenced, Defendant is responsible for the initiation or maintaining of criminal proceedings if her "expressed direction, request or pressure of any kind was the determining factor in the prosecutor's decision to commence the prosecution." *Donohoe*, 722 F. Supp at 1519.

The question of participation is a question of fact informed by "[t]he totality of the circumstances." *Sykes*, 625 F.3d at 311. Plaintiffs sufficiently alleged a plausible scenario in the Complaint under which the Defendant influenced or participated in the decision to prosecute through her conduct. Despite Defendant's attempts to downplay the persuasive effect of a high-ranking member of MSP personally visiting a prosecutor for a clandestine closed-door meeting, Plaintiffs have sufficient reason to believe that Defendant abused her authority to demand the prosecutor to issue charges. The in-person meeting raises serious questions about the prosecutor's supposed independent decision-making, especially after the result of the meeting was the charges being issued after they were previously placed in the "decline to issue" category. This event is especially notable as Defendant had no reason to remain involved with the decision to prosecute. Defendant was relieved of her obligation to participate in the events after she reported the

alleged incident to PSS, as after the referral to First District for investigation, the analysis for charges should have been in the prosecutor's sole and independent discretion. In other words, if Defendant had simply stopped at reporting the matter to internal affairs, Plaintiffs would not have a case. But Defendant could not leave well-enough alone and decided not only to insert herself into the criminal investigatory process but also twist the prosecutor's arm by encouraging him to charge these police troopers with serious criminal offenses.

Defendant may contest this interpretation of the facts, but as established in *Hart*, these factual distinctions cannot appropriately be resolved by a motion to dismiss. *Hart*, 973 F.3d at 643. At the motion to dismiss stage, the facts alleged in the Complaint must be interpreted in a light most favorable to the Plaintiffs, as Plaintiffs alleged a sufficiently plausible scenario of malicious prosecution. The logic applied in *Hart* also applies to the second prong of the *Sykes* definition of malicious prosecution. In order to conduct a more granular probable cause analysis that compares the facts of this case to existing malicious

prosecution precedents, the record on the factual scenario encountered must first be developed. *Id.* at 643.

Contrary to Defendant's contention, Plaintiffs have consistently alleged that there was a lack of probable cause for criminal prosecution, and that Defendant's motive to maintain criminal charges against Plaintiffs was related to her goal of enriching the brother of her acquaintance. The reasonableness of a particular use of force must be judged from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386 (1989). Therefore, whether or not the Plaintiffs' actions in this case could have constituted an intentional, unconsented, and harmful or offensive touching such that probable cause existed as a matter of law, should be judged from the perspective of a reasonable officer on the scene at the time.

In this case, Plaintiffs turned on their emergency lights and conducted a stop against the alleged victim (Long). After Long attempted to leave the scene on his bicycle, Plaintiffs were forced to pursue him on foot. Plaintiffs attempted to handcuff Long, but Long proceeded to actively resist the attempts of *three* officers to place him in

handcuffs. Long's active resistance was so volatile that the officers on scene used escalating non-lethal tactics to attempt to get Long in handcuffs. Plaintiffs did not use or threaten to use lethal force against Long throughout the duration of the encounter. After Long was finally handcuffed and could no longer actively resist, Plaintiffs refrained from exercising the use of *any* further force. Judged from the perspective of a reasonable officer on the scene, rather than one with the benefit of 20/20 hindsight vision, Plaintiffs' actions in this case would not constitute an intentional, unconsented, and harmful or offensive touching such that probable cause existed as a matter of law. While a failure to bind over is not tantamount to actionable malicious prosecution on its own, it does provide further support towards the Plaintiffs' contention that probable cause was not present.

Ultimately, the validity of a motion to dismiss must be judged in the light most favorable to the Plaintiffs as the non-moving party. In this case, Plaintiffs have clearly alleged a factual scenario that is plausible (more than a mere possibility) at a minimum, which is sufficient to overcome the necessary hurdle. As with any other motion to dismiss, any analysis should be conducted while accepting the

plaintiffs' factual allegations as true and drawing all reasonable inferences in their favor.

In this case, Plaintiffs demonstrated a plausible scenario in regard to all four prongs of the necessary elements for a valid Fourth Amendment/malicious prosecution claim. Although Defendant may disagree with Plaintiffs' interpretation of the events (specifically elements one and two), a more granular analysis of the application of various precedents from within this Circuit is inappropriate to conduct at this, a motion to dismiss stage, of these proceedings.

## CONCLUSION AND RELIEF REQUESTED

WHEREFORE, Plaintiffs hereby respectfully request that this Court deny the Defendant's Rule 12(b)(6) Motion to Dismiss.

Respectfully submitted:

Dated: April 8, 2025

/s/ Patrick William O'Keefe
Patrick William O'Keefe (P59324)
Nathaniel P. Pfeiffer (P87830)
O'Keefe Law, PLLC
Attorneys for Plaintiffs
7804 Francis Ct., Ste. 210
Lansing, MI 48917
(517) 253-0114
patrick@okeefelaw.net
nathaniel@okeefelaw.net