UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CODY LUKAS et al.,

Plaintiffs,

v.

AIMEE BRIMACOMBE,

Defendant.

Case No. 25-10432
Honorable Shalina D. Kumar
Magistrate Judge Anthony P. Patti

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS (ECF NO. 7)

### I.   Introduction

Plaintiffs, Michigan State Police ("MSP") troopers Cody Lukas ("Lukas") and Justin Simpson ("Simpson") (collectively "the troopers" or plaintiffs) sue defendant Aimee Brimacombe ("Brimacombe"), an MSP officer, under 42 U.S.C. § 1983 for malicious prosecution in violation of their Fourth Amendment rights. Brimacombe moves to dismiss the trooper's claim against her. ECF No. 7. That motion is fully briefed, ECF Nos. 7, 8, 9, and the Court has determined that a hearing is unnecessary. *See* E.D. Mich. LR 7.1(f)(2). For the reasons discussed below, the Court denies defendant's motion to dismiss.

### II.   Factual Background

Page **1** of **21**

According to the allegations in the complaint, the troopers were criminally charged for conduct surrounding the arrest of a suspect, Jacob Long ("Long"), in August 2022. ECF No. 1. Long's sister reached out to Brimacombe, an acquaintance and Facebook friend, to report her belief that the troopers had used excessive force against her brother. ¶ ¶ 5, 33.[1] Plaintiffs acknowledge that Brimacombe followed proper protocol by notifying the MSP's Professional Standards Section ("PSS") about the allegations. ¶ ¶ 6, 36, 42. However, they claim that she overstepped her professional obligations and violated their constitutional rights by pressuring Shiawassee County Prosecutor, Scott Koerner ("Koerner"), to issue criminal charges against the troopers. ¶ ¶ 6, 8, 37.

Plaintiffs allege that after Brimacombe reported the complaint about them to PSS, it assigned the investigation to Detective Sergeant Isaac Mills ("Mills"). ¶ 44. Mills attempted to interview Long but Long was uncooperative and refused to make a statement. ¶ 45. The MSP submitted a request for review to Koerner to determine whether there was probable cause to believe the troopers committed crimes in the line of duty. ¶ 46.

---

[1] Complaint paragraphs cited are all within ECF No. 1.

Initially, an assistant prosecuting attorney informed Lukas that the file was placed in the "closed" bin, meaning that no criminal charges would be filed against the troopers. ¶ 52. Additionally, Koerner informed the troopers' post commander, former First Lieutenant Yvonne Brantley ("Brantley"), that he was not going to charge them. ¶ 60. However, about two weeks before plaintiffs were criminally charged, Brimacombe called Brantley to tell her that Koerner was "definitely going to charge" the troopers. ¶ 61. According to plaintiffs, Brimacombe stated that she knew they "would be criminally charged because she had a 'friend in the (Prosecutor's) office' whom she 'spoke to on a regular basis.'" ¶ 64.

According to an administrative assistant in the Shiawassee County Prosecutor's Office, after the file was placed in the "closed bin," Brimacombe met behind closed doors with Koerner. ¶ 50. After the closed-door meeting with Brimacombe, Koerner removed the file from the closed bin and issued criminal complaints against the troopers. ¶ 53.

Koerner charged Lukas with Misconduct in Office, a felony, and misdemeanor Assault and Battery. ¶ 67. Koerner charged Simpson with misdemeanor Assault and Battery. ¶ 68. Plaintiffs were arraigned on these charges and suspended from their positions pending the outcome of the

criminal case. ¶ 71. Simpson was suspended with pay; Lukas was suspended without pay because of the felony charge against him. ¶ 72.

According to plaintiffs' assertions, MSP Sergeant Evan Neilson and John Cecil, an investigator with the Shiawassee County Prosecutor's Office, both claim that Koerner expressed that he did not want to prosecute the troopers but was getting "pressure from Lansing" to do so. ¶ ¶ 79, 83. Plaintiffs assert that the facts permit the reasonable inference that the "pressure from Lansing" came from Brimacombe. ¶ 80.

In May 2023, Lukas appeared in the 66th District Court for a preliminary examination on the felony charge, Misconduct in Office. ¶ 97. Brimacombe testified as a witness for the prosecution at the hearing. ¶ 99. The 66th District Court found that the prosecutor had not met its burden of showing probable cause that a felony was committed and thus the felony charge against Lukas was dismissed. ¶ 98. The troopers continued to face the misdemeanor charges until July 2023, when Koerner successfully moved to dismiss all charges against the troopers. ¶ ¶ 132-34.

In addition to facing criminal charges and suspension from their jobs, the troopers allege that they have suffered reputational damage as a result of Brimacombe's actions. ¶ ¶ 85, 95-6. The troopers claim that Brimacombe

assisted the MSP in issuing a news release and making the video of the incident with Long available to the public on YouTube. ¶ 84. According to the troopers, these actions painted them in a negative light and subjected them to heavy public criticism and immeasurable stress. ¶ 86. It also subjected them to questions relating to their integrity and credibility as witnesses when they testified during the course of their duties. ¶ ¶ 93-5.

Finally, Brimacombe, as the MSP officer in charge of the Risk Management, agreed to settle Long's civil suit against the troopers for $999,999. ¶ ¶ 139-40. Plaintiffs allege that Brimacombe settled for this exorbitant amount,[2] without their input and only 60 days after they filed their answers to Long's complaint, to further harm their reputations as MSP troopers. ¶ ¶ 143-44.

Brimacombe moves to dismiss the complaint claiming she is entitled to absolute immunity, qualified immunity, and that the troopers' claims fail to state a claim for relief. *See generally* ECF No. 7.

---

[2] The complaint notes that this amount is significant because it is only one dollar short of the amount that requires gubernatorial and legislative review. ¶ 140.

### III.     Analysis

### A. Standard of Review

"To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege sufficient facts that, taken as true, to state a plausible claim for relief." *Thomas v. Montgomery*, 140 F.4th 335, 339 (6th Cir. 2025) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A complaint states a claim when it alleges facts that, if true, make out a claim for relief that is plausible on its face, and that 'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Hodges v. City of Grand Rapids*, 139 F.4th 495, 504 (6th Cir. 2025) (quoting *Iqbal*, 556 U.S. at 678)). "[W]hen evaluating a complaint's sufficiency, [courts] accept its factual allegations as true, draw all reasonable inferences in the plaintiff's favor, and only then determine whether those facts and inferences plausibly give rise to an entitlement to relief." *Id*. (quoting *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020)) (internal marks omitted). This remains true even if "a defendant raises the defense of qualified immunity." *Id*.

### B.    Malicious Prosecution (Fourth Amendment)

To state a constitutionally cognizable claim of malicious prosecution under the Fourth Amendment, a plaintiff must establish that: (1) the defendant made, influenced, or participated in the decision to prosecute the plaintiff; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceedings, the plaintiff suffered a deprivation of liberty apart from the initial arrest; and (4) the criminal proceedings were resolved in the plaintiff's favor. *Tanner v. Walters*, 98 F.4th 726, 734 (6th Cir. 2024).

The parties do not dispute that plaintiffs have satisfied the third and fourth elements of a federal malicious prosecution claim. *See Miller v. Maddox*, 866 F.3d 386, 393 (6th Cir. 2017) (finding that post-arrest requirements such as posting bond and travel restrictions are sufficient deprivations of liberty to satisfy the third element); *see also Thompson v. Clark*, 596 U.S. 1332, 1341 (2022) (finding a court's dismissal of criminal charges upon a prosecutor's motion satisfies the fourth element of a Fourth Amendment malicious prosecution, which requires only that a criminal prosecution ended without a conviction, not "some affirmative indication of

innocence"). This leaves the Court to resolve only the first and second elements.

### 1. Decision to Prosecute

As noted above, the first element of a constitutional malicious prosecution claim requires a plaintiff to allege facts that the defendant made, influenced, or participated in the decision to prosecute. *See Tanner*, 98 F.4th at 734. Although courts do not require a showing of true "malice," for this element, the requisite participation in the decision must be more than "passive or neutral." *Johnson v. Moseley*, 790 F.3d 649, 654 (6th Cir. 2015). "[T]here must some element of blameworthiness or culpability in the participation…, something beyond mere negligence or innocent mistake, to satisfy the elements of a [constitutional] malicious prosecution claim…." *Id*. at 655. An official, who exerts "pressure or influence over an individual who…ma[kes] the decision to prosecute" has participated and influenced the decision to prosecute. *See Sykes v. Ander*son, 625 F.3d 294, 316 (6th Cir. 2010) (internal citation omitted).

Here, the troopers allege that Koerner had decided not to criminally charge the troopers until Brimacombe interfered and pressured Koerner to prosecute them. Accepting as true—as the Court must—the troopers'

factual allegations supporting this claim against Brimacombe, the Court

finds that the troopers' allegation that Brimacombe influenced or

participated in the decision to prosecute them sufficient to withstand the

motion to dismiss.

2. Probable Cause

To determine if there was probable cause to initiate criminal

proceedings against a malicious prosecution plaintiff, a court must consider

if the facts known, under the totality of the circumstances, would induce a

prudent person to believe the plaintiff had committed an offense. *See*

*Sykes*, 625 F.3d at 306. The existence of probable cause presents a mixed

question of law and fact. *Gerics v. Trevino*, 974 F.3d 798, 803 (6th Cir.

2020). The ultimate question of probable cause in a civil case is a matter of

law for the court to decide when the facts of the events leading up to the

charging decision are undisputed. *Id*. at 805. In other words, whether

established facts satisfy the relevant statutory or constitutional standard

must be resolved by the court. *Id*. However, when the parties dispute the

factual circumstances behind the decision to initiate criminal proceedings,

the issue is one for the factfinder. *See id*.

Accordingly, the troopers argue that a record on the factual basis for the initiation of the criminal charges against them must be developed before a probable cause analysis may be conducted. *See Hart v. Hillsdale Cnty.*, 973 F.3d 627, 643 (6th Cir. 2020) (analysis comparing specific scenarios officials had encountered to malicious prosecution precedents requires a developed factual record).

Brimacombe argues that dismissal is appropriate because the troopers cannot refute the existence of probable cause for their prosecution based on the troopers' dashcam video of their confrontation with Long. *See* ECF No. 7-3. Specifically, she contends that, because "reasonable minds can disagree about what conclusions to draw from the police encounter depicted on the [dashcam] video," probable cause existed to charge the troopers. ECF No. 7, PageID.239. But, on a motion to dismiss, a court may not consider video evidence unless it is clear and blatantly contradicts or utterly undermines a complaint's allegations. *Hodges*, 139 F.4th at 510.

In *Hodges*, the defendant urged the court to consider body camera footage at the motion to dismiss stage to controvert the plaintiff's allegation that the police lacked probable cause to arrest plaintiff's decedent. *Id*. at 506-09. The Sixth Circuit determined that the plaintiff's complaint

Page **10** of **21**

"contain[ed] no allegations about the safety or danger of the physical scene that could be directly contradicted by the video, even if danger were apparent from the face of the video." *Id*. at 508. Further, the court noted that "whether the scene was sufficiently dangerous to merit the officers' treatment of [the decedent] is a question of fact." *Id*. (a dispute about whether officers had probable cause or reasonable suspicion under the circumstances is necessarily fact driven and requires a factual inquiry about what circumstances actually existed).

Here, the Court first notes that Brimacombe relies upon the dashcam's video evidence to support her argument for dismissal, but she does not address whether the video evidence blatantly contradicts or undermines the troopers' complaint. Nevertheless, the Court must evaluate the video under the direct-contradiction-or-utterly discredits threshold before it can consider it in deciding the motion to dismiss. *See id*. at 508.

At the outset, the Court notes that the video evidence from the troopers' dashcam is not clear, as it must be to "blatantly contradict or utterly discredit" the complaint's version of events. *Id*. at 506 (quoting *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1002 (6th Cir. 2024)) (cleaned up). Where "video evidence is inconclusive…, it does not blatantly contradict or

utterly undermine the complaint's allegations." *See id.* at 507.

Brimacombe's argument that "reasonable minds can disagree about what

conclusions to draw from the police encounter depicted on the [dashcam]

video" tacitly acknowledges that the video is inconclusive on the underlying

core issue of whether the troopers were justified in using force and thus

insulated from prosecution for criminal misconduct and assault.[3] ECF No.

7, PageID.239.

Additionally, although the complaint does not allege the details of the

troopers' use of force or of Long's resistance, it attached as exhibits the

transcript of Lukas's PE hearing, at which the video was played and

multiple witnesses testified about what could be observed in the video. *See*

ECF Nos. 1-2, 1-3. Clearly, the video itself cannot blatantly contradict or

discredit the testimony of multiple witnesses recounting, describing, and

explicating its depiction of the events. Accordingly, the Court finds that the

video evidence does not blatantly contradict or utterly undermine the

allegations in the troopers' complaint. Whether the video evidence might

---

[3] A law enforcement officer's reasonable use of force provides a legally cognizable affirmative defense and vitiates probable cause for an assault charge. *See Shaw v. Wozniak*, 2025 WL 1285805, at *4 (S.D. Ohio May 2, 2025).

establish that the troopers were not entitled to use force against Long, thereby giving rise to probable cause for criminal charges against them, is an argument for summary judgment or trial. *See id*. at 509. Hence, the dashcam footage will not be considered by the Court for this motion.

Without the video evidence, the Court's inquiry is confined to the complaint. *Id*. To survive a motion to dismiss, the troopers need only allege facts that give rise to the plausible inference that the defendants violated a clearly established right." *Hodges*, 139 F.4th at 509 (citing *Saalim*, 97 F.4th at 1002). The complaint alleges that Koerner declined to initiate criminal proceedings against the troopers, notwithstanding the dashcam video evidence, and only charged them after Brimacombe exerted pressure on him to do so. It alleges that the state district court, having watched and taken testimony about the dashcam video, found no probable cause for the felony charge against Lukas and thereafter Koerner dismissed the misdemeanor assault charges against both troopers. These allegations give rise to a plausible inference that the troopers were prosecuted without probable cause because Brimacombe interfered and pressured Koerner to do so.

In sum, the troopers have alleged facts which allow the inference of Brimacombe's interference in the decision to prosecute, and that the prosecution was not supported by probable cause. The troopers' plausible claim for malicious prosecution against Brimacombe survives the motion to dismiss.

### C. Qualified Immunity

Although a "plaintiff ultimately bears the burden to show that the defendant public official is not entitled to qualified immunity, on a motion to dismiss, the question for the court is whether the plaintiff has plausibly alleged that the defendant violated a clearly established constitutional right." *Hodges*, 139 F.4th at 504 (citing *Guertin v. Michigan*, 912 F.3d 907, 917 (6th Cir. 2019) and *Marvaso*, 971 F.3d at 605).

Qualified immunity is a defense to suit rather than liability, thus the Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Guertin*, 912 F.3d at 917 (internal quotation omitted). But this "point is usually summary judgment and not dismissal under Rule 12." *Id*. (internal quotation omitted). "[W]hether the alleged constitutional violation is clearly established may be difficult" to assess "on the pleadings," because "that inquiry may turn on

case-specific details that must be fleshed out in discovery." *Hodges*, 139 F.4th at 504 (internal quotations omitted). Without such details, a court may not be able to determine "whether a case is obvious or squarely governed by precedent, which prevents [it] from determining whether the facts of" the case before it "parallel a prior decision…for purposes of determining whether a right is clearly established." *Id*. at 505 (quoting *Guertin*, 912 F.3d at 917) (internal marks omitted). Often the court needs "a fuller factual picture to define the contours of the right at issue to determine if it was clearly established." *Id*. (quoting *Diei v. Boyd*, 116 F.4th 637, 650 (6th Cir. 2024)) (internal marks omitted). Qualified immunity may be resolved on a motion to dismiss only "when the complaint establishes the defense." *Id*. (*quoting Siefert v. Hamilton County*, 951 F.3d 753, 762 (6th Cir. 2020)). A complaint does not establish the defense of qualified immunity when the plaintiff's alleged facts allow a plausible inference that the defendant violated a clearly established Fourth Amendment right to be free from malicious prosecution.

As discussed in the previous sections, plaintiffs' allegations, if true, allow the reasonable inference that Brimacombe participated in or influenced the decision to criminally charge the troopers in the absence of

probable cause that they committed a crime. The troopers thus state a plausible claim for a constitutional violation, and Brimacombe cannot establish the defense of qualified immunity at this stage of the proceedings.[4] *See id*. The troopers' claim cannot be dismissed now on this basis.

### D. Absolute Immunity

Brimacombe argues that she is entitled to absolute immunity for the testimony she gave at Lukas's preliminary examination. Indeed, "[a]bsolute testimonial immunity bars claims based on a defendant's testimony in a judicial proceeding." *Ramsey v. Rivard*, 110 F.4th 860, 865 (6th Cir. 2024). However, "pretrial acts do not benefit from absolute immunity, despite any connection these acts might have to later testimony." *Id*. (quoting *Gregory v. City of Louisville*, 444 F.3d 725, 738-39 (6th Cir. 2006)) (marks omitted). Where the defendant's pretrial conduct is the source of plaintiff's alleged harm, the defendant's "subsequent testimony about that conduct cannot 'insulate' [that] conduct." *Id*. at 866 (quoting *Gregory*, 444 F.3d at 738).

---

[4] Brimacombe does not argue that the constitutional rights she allegedly violated are not clearly established.

Page **16** of **21**

Here, the troopers do not allege that they were harmed by Brimacombe's testimony. To the contrary, the charges were dismissed notwithstanding her testimony at the preliminary examination. Rather, Lukas and Simpson assert that Brimacombe's pre-charge conduct resulted in their being charged without probable cause. *See generally* ECF No. 1. Specifically, they assert that Brimacombe caused them to be wrongfully charged by pressuring Koerner into filing criminal charges despite the absence of probable cause. The troopers do not allege that Brimacombe testified about any interactions or communications between her and Koerner (or anyone in the Prosecutor's Office).[5] Even if she had testified that she did or did not have such interactions or communications, plaintiffs allege that the interactions and communications themselves, not her testimony about them, satisfy the first element for a malicious prosecution

---

[5] Brimacombe argues in the brief in support of her motion to dismiss that plaintiffs' claims arise from her preliminary examination testimony because paragraphs 99 through 126 of their complaint reference that testimony. ECF No. 7, PageID.230. But these allegations in the complaint state only that Brimacombe testified that she "informed the people who were in charge of investigating these types of incidents" and that she is the person with the authority to offer settlements and the amount of those settlements. ECF No. 1, PageID.14, ¶ ¶ 120, 124. The troopers' allegations that Brimacombe pressured Koerner to criminally charge them does not rely on this testimony.

cause of action. The Court agrees. For these reasons, Brimacombe is not entitled to absolute immunity to the troopers' malicious prosecution claim.

### E.      Issue Preclusion

Brimacombe argues that an opinion and order from the Michigan court of claims precludes the troopers' recovery in this Court.[6] *See* ECF No. 9-1. The Court disagrees. Issue preclusion only applies when, among other things, the same issue was actually litigated and necessarily determined in the first proceeding. *See Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001) (citing *People v. Gates*, 452 N.W.2d 627, 630-31 (Mich. 1990); *see also Haring v. Prosise*, 462 U.S. 306, 313 (1983) (courts apply state law of collateral estoppel to determine whether issue preclusion applies in § 1983 cases).

The Court's review of the Michigan court's opinion reveals that its decision did not address the same issues before this Court. First, the action before the court of claims raised the troopers' claims against Brimacombe

---

[6] Brimacombe raised this argument in her reply brief because the court of claims issued it after her motion was filed. *See* ECF No. 9. Brimacombe noted she had no objection to granting leave to the troopers to file a sur-reply brief addressing the newly-raised issue preclusion argument, however, they did not seek such leave from the Court. Regardless, the Court does not need additional briefing to decide this issue.

for abuse of process and malicious prosecution under Michigan law. A malicious prosecution claim under Michigan law has different elements than a Fourth Amendment malicious prosecution claim.

Critically here, as the court of claims determined, the state malicious prosecution claim requires that the action taken against the plaintiff "was undertaken with malice or a purpose in instituting the critical claim other than bringing the offender to justice." ECF No. 9-1, PageID.293-94 (citing *Matthews v. Blue Cross & Blue Shield of Mich.*, 572 N.W.2d 603 (Mich. 1998)). Further, again as noted by the court of claims, "[a] state malicious prosecution claim against a law enforcement officer is viable only when the officer 'knowingly swears to false facts in a complaint, without which there is no probable cause.'" *Id*. at PageID.294 (citing *Payton v. Detroit*, 536 N.W.2d 233 (Mich. Ct. App. 1995)). The court of claims dismissed the troopers' state malicious prosecution claims because they could provide no evidence that "Brimacombe encouraged the levying of charges with knowingly false facts." *Id*. The Fourth Amendment malicious prosecution claim at issue here carries no requirement for knowingly false facts for law enforcement officer liability. Accordingly, the court of claims' decision that

the troopers' claim failed to satisfy a state law requirement not imposed by their federal cause of action can have no preclusive effect here.

Second, the court of claims granted Brimacombe immunity from the troopers' claims based on Michigan's Governmental Tort Liability Act. *See id*. at PageID.291-93; M.C.L. 691.1407, *et seq*. The court of claims ruled that Brimacombe enjoyed governmental immunity from the troopers' malicious prosecution claim because her actions were undertaken during the course and within the scope of her employment, were undertaken in good faith, not with malice, and were discretionary as opposed to ministerial. *Id*. (citing *Odom v. Wayne Cnty*., 760 N.W.2d 217 (Mich. 2008)). But the governmental immunity shielding Brimacombe in the state action comes from a state statute not applicable to the troopers' § 1983 case before this Court. *See Howlett v. Rose*, 496 U.S. 356, 375-76 (1990). So, again, the court of claims' decision to grant Brimacombe immunity to a state law tort claim according to the terms of a state statute has no preclusive effect on the troopers' Fourth Amendment claim before this Court. In short, nothing in the court of claims' decision precludes the troopers' case from proceeding here.

## IV.    Conclusion

For these reasons, the Court **DENIES** defendants' motion to dismiss

(ECF No. 7) the troopers' complaint (ECF No. 1).

**IT IS SO ORDERED.**

<u>s/ Shalina D. Kumar</u>
SHALINA D. KUMAR
Dated: March 4, 2026                          United States District Judge